# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES B. ASHMEN, JR., | : | No. 3:17cv104 |
|         Plaintiff | : | |
|    v. | : | (Judge Munley) |
| | : | |
| BIG BOULDER CORPORATION d/b/a | : | |
| JACK FROST/BIG BOULDER SKI | : | |
| RESORTS, JFFB SKI AREAS, INC. | : | |
| d/b/a JACK FROST/BIG BOULDER | : | |
| SKI RESORTS and PEAK RESORTS, | : | |
| INC., | : | |
| | : | |
|         Defendants | : | |

............................................................................................................

## **MEMORANDUM**

Before the court for disposition is a motion for summary judgment filed by the defendant in this negligence action. The motion is fully briefed and ripe for disposition.

**Background**

This case arises from a snowboarding accident that occurred on January 24, 2015. (Doc. 19-1, Def. Stmt. of Mat. Facts (hereinafter "SOF") ¶ 1).[1] Plaintiff James Ashmen collided with snowmaking equipment while snowboarding down a closed trail at Big Boulder Ski Area in Lake Harmony, PA. (Id. ¶ 2). The plaintiff, who was unaware that the trail was closed due to improper signage, encountered

---

[1] For this brief factual background section, we will cite to the defendants' statement of material facts as to which no genuine issue remains to be tried. The plaintiff generally agrees with these background facts.

the snowmaking equipment in the middle of the trail while he was in motion. (Id. ¶ 9). Unable to avoid collision, he struck his leg on the snowmaking equipment. (Id. ¶ 10). Plaintiff suffered injury as a result. (Id. ¶ 2).

Based upon these facts, the plaintiff filed a two-count complaint on January 20, 2017, against the following entities that owned, operated, maintained and/or controlled Big Boulder Ski Area: Defendant Big Boulder Corporation d/b/a Jack Frost/Big Boulder Ski Resorts (hereinafter "Big Boulder"), Defendant JFBB Ski Areas, Inc., d/b/a Jack Frost Big Boulder Ski Resorts (hereinafter "JFBB"), and Defendant Peak Resorts, Inc. (hereinafter "Peak Resorts"). Plaintiff raises a negligence claim as well as a gross negligence claim. The defendants collectively filed the instant motion for summary judgment on September 20, 2017, bringing this case to its present posture.

**Jurisdiction**

This case is before us based upon diversity of citizenship. 28 U.S.C. § 1332(a). Cases are properly brought in federal district court under the diversity statute when the action involves citizens of different states and an amount in controversy, exclusive of interest and costs, in excess of $75,000.00. See 28 U.S.C. § 1332(a). Instantly, Plaintiff Ashmen is a citizen of New Jersey. (Doc. 1, Compl. ¶ 3). Defendant Big Boulder is incorporated in the Commonwealth of Pennsylvania, with its principal place of business in the same. (Id. ¶ 4).

Defendant JFBB is incorporated in Pennsylvania, with its principal place of business in the same. (Id. ¶ 6). Defendant Peak Resorts is also incorporated in Pennsylvania, with its principal place of business in the same. (Id. ¶ 8). As a federal court sitting in diversity, the substantive law of Pennsylvania shall apply to the instant case. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Knabe v. Boury, 114 F.3d 407, 410 n.4 (3d Cir. 1997) (citing FED. R. CIV. P. 56(C)). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the facts in the light most favorable to the party opposing the motion. Int'l Raw Materials, Ltd. v. Stauffer Chem. Co., 898 F.2d 946, 949 (3d Cir. 1990). The

3

burden is on the moving party to demonstrate that the evidence is such that a reasonable jury could not return a verdict for the non-moving party. Anderson, 477 U.S. at 248 (1986). A fact is material when it might affect the outcome of the suit under the governing law. Id. Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by establishing that the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. Celotex v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies its burden, the burden shifts to the nonmoving party, who must go beyond its pleadings, and designate specific facts by the use of affidavits, depositions, admissions, or answers to interrogatories demonstrating that there is a genuine issue for trial. Id. at 324.

**Discussion**

The defendants move for summary judgment on plaintiff's negligence claims, asserting that they had no duty to protect the plaintiff because the plaintiff assumed the inherent risk of colliding with snowmaking equipment by engaging in the sport of snowboarding. Plaintiff counters that there are genuine issues of material fact in this case that preclude summary judgment on whether colliding with such equipment was an inherent risk. After careful review, we agree with the plaintiff.

In Pennsylvania, the elements necessary to plead an action in negligence are: (1) the existence of a duty or obligation requiring a certain standard of conduct; (2) a failure to conform to that duty, or a breach thereof; (3) a causal connection between the breach and the harm; and (4) actual loss or damage suffered. Atcovitz v. Gulph Mills Tennis Club, Inc., 812 A.2d 1218, 1222 (Pa. 2002). In the instant motion, the defendants challenge the existence of a duty. "A duty, in negligence cases, may be defined as an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Id.

As noted above, the defendants argue that here, they did not owe a duty to the plaintiff because he "assumed the inherent risk of colliding with snowmaking equiptment while snowboarding at Big Boulder." (Doc. 20, Def.'s Br. in Supp. of MSJ, at 2). This language used by the defendant, however, appears to conflate two discrete doctrines: the voluntary assumption of the risk doctrine and the inherent risk doctrine. We will begin our analysis by discussing the voluntary assumption of the risk doctrine and its applicability in this case.

**I. Assumption of the Risk Doctrine**

The defendants first argue that the plaintiff "assumed the risk" of colliding with snowmaking equipment, negating any duty it had to plaintiff. We disagree.

5

Pennsylvania law, as stated by the Third Circuit Court of Appeals and Pennsylvania Superior Court, provides:

> Assumption of risk is based on the notion that, by taking the chance of injury from a known risk, the plaintiff has consented to relieve the defendant of its duty toward him. See Green v. Sanitary Scale Co., 431 F.2d 371, 374 (3d Cir.1970); Restatement (Second) of Torts § 496C, comment h. Assumption of risk thus depends upon subjective awareness of the defect, which can be proved 'by circumstantial evidence sufficient to permit an inference that the plaintiff was aware [of] and understood the risk.' Staymates [v. ITT Holub Industries, 364 Pa. Super. 37, 527 A.2d 140,] 146. To imply assumption of risk from the Plaintiff's conduct, the conduct 'must be such as fairly to indicate that the plaintiff is willing to take his chances.' Restatement (Second) of Torts § 496C, comment h. Whether the plaintiff knows of the existence of the risk and whether he appreciates its magnitude and unreasonable character are questions of fact to be determined by the jury. Staymates, 527 A.2d at 146. However, before the theory may be submitted to a jury, the defendant must produce evidence that the plaintiff fully understood the specific risk, and yet voluntarily chose to encounter it. Fish v. Gosnell, 316 Pa. Super. 565, 577, 463 A.2d 1042, 1048 (1983).

Wagner v. Firestone Tire & Rubber Co., 890 F.2d 652, 657 (3d Cir. 1989).

Pennsylvania law, following the Second Restatement of Torts, breaks assumption of risk into four separate categories, or types. See RESTATEMENT (SECOND) OF TORTS at § 496A, cmt. c; see also Jones v. Three Rivers Mgmt. Corp., 394 A.2d 546, 552–53 (Pa. 1978); Rutter v. N.E. Beaver Cty. Sch. Dist., 437 A.2d 1198 (Pa. 1981). In each of the four categories of assumption, knowledge of the risk is a prerequisite for the plaintiff to take it on himself. Relevant to the instant case is category two:

> A second, and closely related, meaning is that the plaintiff has entered voluntarily into some relation with the defendant which he knows to involve the risk, and so is regarded as tacitly or impliedly agreeing to relieve the defendant of responsibility, and to take his own chances. Thus a spectator entering a baseball park may be regarded as consenting that the players may proceed with the game without taking precautions to protect him from being hit by the ball. Again the legal result is that the defendant is relieved of his duty to the plaintiff. As to such implied assumption of risk, see § 496 C.

RESTATEMENT (SECOND) OF TORTS at § 496 A, cmt. c, 2 (emphasis added).[2]

---

[2] The remaining three categories set forth at § 496 A, comment c, 1, 3–4, are as follows:

1. In its simplest form, assumption of risk means that the plaintiff has given his express consent to relieve the defendant of an obligation to exercise care for his protection, and agrees to take his chances as to injury from a known or possible risk. The result is that the defendant, who would otherwise be under a duty to exercise such care, is relieved of that responsibility, and is no longer under any duty to protect the plaintiff. As to such express assumption of risk, see § 496 B.

3. In a third type of situation the plaintiff, aware of a risk created by the negligence of the defendant, proceeds or continues voluntarily to encounter it. For example, an independent contractor who finds that he has been furnished by his employer with a machine which is in dangerous condition, and that the employer, after notice, has failed to repair it or to substitute another, may continue to work with the machine. He may not be negligent in doing so, since his decision may be an entirely reasonable one, because the risk is relatively slight in comparison with the utility of his own conduct; and he may even act with unusual caution because he is aware of the danger. The same policy of the common law which denies recovery to one who expressly consents to accept a risk will, however, prevent his recovery in such a case. As to such implied assumption of risk, see § 496 C. As to the necessity that the plaintiff's conduct be voluntary, see § 496 E.

4. To be distinguished from these three situations is the fourth, in which the plaintiff's conduct in voluntarily encountering a known risk is itself unreasonable, and amounts to contributory negligence. There is thus negligence on the part of both plaintiff and defendant; and the plaintiff is barred from recovery, not only by

We emphasize that there can be no assumption of a risk where the risk is not known. See Rutter, 437 A.2d at 1204. In certain circumstances, however, where a risk is commonly known, expected, and intrinsic to a particular activity, a plaintiff may be charged with knowledge of that risk by operation of law. But, if the plaintiff can credibly establish that he did not know of or fully appreciate the nature of the risk, a finding that he voluntarily assumed the unknown risk would be unjustified. Id. at 1207 n. 3. In our analysis, we apply a subjective standard, asking what the plaintiff himself knew and understood prior to snowboarding down the trail at Big Boulder.

We end our analysis rather quickly on this point, as the record clearly demonstrates that there are material questions of fact surrounding whether the plaintiff knew and appreciated the risk of colliding into snowmaking equipment. We find it significant that, according to the defendants, the trail was closed at the time of the incident. A careful review of the record leads us to the conclusion that reasonable persons could differ whether the plaintiff knew or did not know that fact, and the additional risks associated with snowboarding down a closed trail. On this basis, we find that the defendant's motion for summary judgment fails.

---

his implied consent to accept the risk, but also by the policy of the law which refuses to allow him to impose upon the defendant a loss for which his own negligence was in part responsible. (See § 467.)

8

## II. Inherent Risk Doctrine

The remainder of the defendant's argument relies on the inherent risk doctrine, or as frequently referred, the "no duty" rule. Here, the defendants contend that colliding with snowmaking equipment is an inherent risk of snowboarding and therefore they did not owe the plaintiff a duty of care.

As discussed above, a court can imply assumption of the risk only when the plaintiff had knowledge of the risk involved. The inherent risk doctrine, however, does not require knowledge, because it is not concerned with the plaintiff at all. Because we need not determine whether the plaintiff knew of the risks involved, we are able to continue our analysis under this doctrine.

Under the "inherent risk doctrine," a defendant is under no duty to protect a plaintiff from the risks inherent in a given activity. If there is no duty, there can be no negligence. The Pennsylvania Supreme Court has established that this doctrine is applicable to ski resort operators. Further, in Pennsylvania's "Skiing Responsibility Act," 42 PA. CONST. STAT. ANN. § 7102, the General Assembly recognized that there are in fact certain inherent risks associated with the sport of downhill skiing.[3] The Act, however, does not define those specific inherent risks.

---

[3] In interpreting the Skier's Responsibility Act, Pennsylvania courts have determine that the "inherent risk" standard under this Act applies in the context of snowboarding. See Bjorgung v. Whitetail Resort, LP, 550 F.3d 263, 268-69 (3d Cir. 2008); Bell v. Dean, 5 A.3d 266 (Pa. Super. 2010). We will therefore use the terms "skiing" and "snowboarding" interchangeably.

Thus, we must analyze the scope of inherent risks as they pertain to downhill skiing. The Pennsylvania Supreme Court has explained that in order for a risk to be inherent in downhill skiing, it must be "common, frequent, and expected." See Hughes v. Seven Springs Farm, Inc., 762 A.2d 339, 345 (Pa. 2000). A number of other courts have addressed examples of risks that fall into this category. See, e.g., Bjorgung v. Whitetail Resort, L.P., 550 F.3d 263 (3d Cir. 2008) (finding that a skier's claim based on the lack of safety netting, improper course plotting, or soft loose snow was barred because those were risks inherent in skiing); Burke v. Ski America, Inc., 940 F.2d 95 (4th Cir. 1991) (interpreting Pennsylvania law to find that a ski resort had no duty of care to injured skier because a "double black diamond" slope with rocks and trees was an obvious inherent danger of skiing); Smith v. Seven Springs Farm, Inc., 716 F.2d 1002 (3d Cir. 1983) (Aldisert, J.) (finding that a skier's claim was barred by assumption of the risk when he chose to ski a steep, icy expert slope with unpadded poles for snowmaking equipment); Savarese v. Camelback Ski Corp., 417 F. Supp. 2d 663 (M.D. Pa. 2005) (Caputo, J.) (holding that a skier was barred from recovery where the injury occurred when he attempted to board the ski lift when the bottom of the chair was not folded down for seating); Crews v. Seven Springs Mountain Resort, 874 A.2d 100 (Pa. Super. Ct. 2005) (holding that the risk of

colliding with a drunk underage snowboarder was not a risk inherent in the sport of downhill skiing).

The defendants direct our attention specifically to <u>Lin v. Spring Mountain Adventures, Inc.</u>, Civ. A. 10–333, 2010 WL 5257648 (E.D. Pa. Dec. 23, 2010). In <u>Lin</u>, the court addressed the nearly identical question of whether colliding with snowmaking equipment that is left on the slope is an inherent risk of skiing. In holding that it is, the court reasoned that "[s]now making equipment is essential to the alpine activity of skiing, and impossible without it. Thus, it is logical that a user of a ski resort would expect the presence and potential hazard of snow making equipment on the slopes." <u>Id.</u> at 8. After careful consideration, we respectfully disagree with the <u>Lin</u> court's analysis.

We find that the simple fact that snowmaking equipment is essential to the sport is insufficient on its own to establish that collision with such equipment is a common, frequent, and expected risk. While we agree with the court in <u>Lin</u> that snowmaking equipment is likely necessary for the sport of skiing, nothing presently before the court establishes that the particular machine in question was located, constructed, padded, and operated in such a manner that did not present an unreasonable, unexpected risk from which defendant would have had a duty to protect plaintiff. In fact, a review of the record suggests that the location of the machine on the day of the accident may have actually been uncommon

11

practice. Anthony Blundetto, a ski patroller on duty at the time of the plaintiff's accident, testified in his deposition that injuries caused from collisions with snowmaking equipment are relatively rare because "normally snow guns are not accessible" and "it would be difficult [for a person] to reach one." (Doc. 22-4, Dep. of Anthony Blundetto, 45:1-2). He elaborated that such machinery is usually located off of the slope. (Id. at 45:4-5).

Moreover, the defendant provides no binding precedent to establish that snowmaking machines are an inherent risk of downhill skiing. Thus, we find that the defendant has failed to establish that the risks alleged to have caused plaintiff's injuries were inherent to snowboarding.

**Conclusion**

The defendants' motion for summary judgment fails for two reasons. First, there are genuine issues of material fact surrounding whether the plaintiff knew and appreciated the risks associated with his actions. Second, the defendants failed to establish that the risks alleged to have caused plaintiff's injuries were inherent to downhill skiing. Accordingly, we will deny the defendants' motion. An appropriate order follows.

**BY THE COURT:**

**Date: May 8, 2018**

**s/ James M. Munley_____**
**JUDGE JAMES M. MUNLEY**
**United States District Court**